PROB 12C
(06/17)

August 29, 2019
pacts id: 349738

# UNITED STATES DISTRICT COURT
## FOR THE
## SOUTHERN DISTRICT OF CALIFORNIA

### Petition for Warrant or Summons for Offender Under Supervision

**Name of Offender:** Alvin Bernard Mitchell (English)     **Dkt No.:** 13CR04510-002-JAH

**Reg. No.:** 36859-048

**Name of Sentencing Judicial Officer:** The Honorable John A. Houston, Senior U.S. District Judge

**Original Offense:** 18 U.S.C. § 1962(d), Conspiracy to Conduct Enterprise Affairs Through a Pattern of Racketeering Activity, a Class C felony.

**Date of Sentence:** April 4, 2016

**Sentence:** 18 months' custody, calculated from April 4, 2016, and consecutive to Nevada State case no. C13927341; 3 years' supervised release. *(Special Conditions: Refer to Judgment and Commitment Order.)*

**Modification:** On June 20, 2019, Mr. Mitchell's conditions of supervision were modified to waive the subsistence fee required by the residential reentry center (RRC).

**Type of Supervision:** Supervised Release     **Date Supervision Commenced:** April 19, 2019

**Asst. U.S. Atty.:** Alessandra P. Serano     **Defense Counsel:** Kurt D. Hermansen, Fed. Defs., Inc. (Appointed) (619) 436-8117

**Prior Violation History:** None.

## PETITIONING THE COURT

**TO ISSUE A NO-BAIL BENCH WARRANT**

PROB12(C)

Name of Offender: Alvin Bernard Mitchell  
Docket No.: 13CR04510-002-JAH

August 29, 2019  
Page 2

The probation officer believes that the offender has violated the following conditions of supervision:

| CONDITIONS | ALLEGATIONS OF NONCOMPLIANCE |
|---|---|
| **(Special Condition)**<br>Not use or possess devices which can communicate data via modem or dedicated connection and may not have access to the Internet without prior approval from the court or the probation officer. The offender shall consent to the installation of systems that will enable the probation officer to monitor computer use on any computer owned or controlled by the offender. The offender shall pay for the cost of installation of the computer software. | 1. On or about June 20, 2019, through August 7, 2019, Mr. Mitchell possessed an internet-capable phone (to wit: an AT&T Flip phone, model 40440), as evidenced by his admission to the probation officer on August 9, 2019, and by a Working Alternatives, Inc. (WAI) incident report, dated August 7, 2019.<br><br>2. During his term of supervised release, Mr. Mitchell used his wife's smartphone, a device capable of communicating data over a dedicated connection, on three or four occasions, as evidenced by his admission to the probation officer and by WAI incident reports, dated August 6 and 7, 2019, respectively.<br><br>3. On or about August 24, 2019, Mr. Mitchell was found in possession of an Amazon Fire TV stick, a device capable of communicating data over a dedicated connection, as evidenced by a WAI incident report, dated August 25, 2019, and by a written statement prepared by Mr. Mitchell, dated August 25, 2019. |

***Grounds for Revocation:*** Upon his release from custody, Mr. Mitchell was placed at Working Alternatives, Inc. (WAI), a residential reentry center (RRC) in Brawley, California. Mr. Mitchell was placed at the facility in order to complete a six-month punitive placement, as ordered by the Court. As to allegation 1, I have received and reviewed an incident report from WAI, dated August 7, 2019, and it reflects the following. On August 7, 2019, RRC staff confiscated a cell phone (AT&T model 40440) from Mr. Mitchell. After inspecting the phone, staff determined it was capable of internet access, as it had a web browser and an active data plan. Additionally, it was determined that the phone had not been approved by the probation officer.

On or about August 9, 2019, the probation officer met with Mr. Mitchell and Rochelle Sims, the director of the Brawley WAI facility, to discuss Mr. Mitchell's case. During the meeting, the probation officer asked Mr. Mitchell about the cell phone referenced above, which was confiscated from him on August 7, 2019. Mr. Mitchell subsequently admitted to obtaining the phone on or about June 20, 2019. When asked why he had not disclosed his procurement of the cell phone to the probation officer or to RRC staff, he indicated he knew he had "jumped the gun."

As to allegation 2, I have received and reviewed two incident reports from WAI, dated August 6 and 7, 2019, respectively. The August 6 report reflects the following: On August 6, 2019, at approximately 8:13 p.m., RRC staff member Rebecca Lara informed Mr. Mitchell of her intent to search his cell phone. Mr. Mitchell replied that he would not submit his phone for a search, as his cell phone had been searched a couple of days prior. He then walked out of the office and went upstairs (to the dorm area). He later returned and demanded to speak to Grant Weiss (Chief Operations Officer of WAI). At that point, Mr. Mitchell consented to a search of his phone. During the search of his phone, Ms. Lara discovered the phone had internet access. Ms. Lara also noted the phone

PROB12(C)

Name of Offender: Alvin Bernard Mitchell
Docket No.: 13CR04510-002-JAH

August 29, 2019
Page 3

contained searches related to *Craigslist* and accidents in San Diego. Ms. Lara indicated that during their interaction, Mr. Mitchell confessed he used *Snap Chat* (a phone application) "every chance he got." The probation officer subsequently sought clarification from Ms. Lara about the incident that occurred on August 6, 2019. She indicated that Mr. Mitchell told her the phone in question was his phone (not his wife's). She added that Mr. Mitchell stated, "I don't have snap chat on here (his black touch screen phone) but I do use it on my wife's phone every chance I get."

I have received and reviewed a WAI incident report, dated August 7, 2019, which reflects that on August 7, 2019, at approximately 3:44 a.m., staff member Jazmin Aguilar was delivering a copy of an incident report to Mr. Mitchell. During their interaction, Mr. Mitchell received a call on his cell phone. Mr. Mitchell answered the call. Ms. Aguilar noticed Mr. Mitchell's cell phone was a touchscreen phone. When asked if he was allowed to have the touchscreen phone, Mr. Mitchell answered, "Yes, my Blackberry [the approved phone] been broken and my case manager approved this new cell phone." In the incident report, Ms. Aguilar noted that records reflected Mr. Mitchell was authorized to use a Blackberry 9700 phone (which is not a "touchscreen" phone).

On August 9, 2019, during the above-mentioned meeting with Mr. Mitchell and Ms. Rochelle Sims, the probation officer asked Mr. Mitchell about the August 6 incident. Mr. Mitchell indicated that the phone he submitted for search actually belonged to his wife. When asked if he had ever used *Snap Chat* on the phone, Mr. Mitchell admitted to using the phone to "Facetime" with his daughter. He claimed he used his wife's phone on three or four occasions during his term of supervised release.

As to allegation 3, I have received and reviewed a WAI incident report, dated August 25, 2019, as well as a written statement prepared by Mr. Mitchell, dated August 25, 2019. The incident report reflects that on August 25, 2019, at approximately 2:05 a.m., an RRC staff member heard the sound of a television emanating from room 203. The staff member determined the source of the sound was Mr. Mitchell's television, which was in room 203. When the staff member went to turn off the television, he noticed an Amazon streaming device (a Fire Stick) attached to the back of it. The device was subsequently confiscated by the staff member. For the Court's information, an Amazon Fire TV stick is a streaming media player that allows users to access movies and televisions shows and browse the internet.

I have also received and reviewed a written statement, prepared by Mr. Mitchell, dated August 25, 2019. The statement was submitted by Mr. Mitchell to RRC staff. In the statement, Mr. Mitchell wrote that on August 24, 2019, while he was asleep, his "T.V Fire Stick" was "snatched" out of his television. He also wrote that he had been in possession of the device for "4 months," and he complained that he should have been awakened at the time the device was confiscated.

### VIOLATION SENTENCING SUMMARY

### SUPERVISION ADJUSTMENT

Initially, Mr. Mitchell's prospects for the future seemed promising. He obtained gainful employment, and by all accounts, was attempting to lead a violation-free lifestyle. Unfortunately, despite the outward appearance of compliance and stability, Mr. Mitchell was consistently violating the conditions of his supervision by using unauthorized devices. On August 7, 2019, Yvette Raygoza, assistant director of Working Alternatives, Inc., contacted the probation officer to report Mr. Mitchell was in possession of an internet-capable phone. Staff had

discovered the existence of his smartphone use on prior occasions, but those staff members were either unaware or had forgotten about Mr. Mitchell's Court-ordered internet restrictions.

On August 9, 2019, the undersigned met with Rochelle Sims, the director of the Brawley WAI facility. She explained that Mr. Mitchell had made allegations of unprofessional conduct against a female staff member. On August 2, 2019, Ms. Sims and her supervisor/manager (Grant Weiss) met with Mr. Mitchell to discuss the allegations. I have received and reviewed a report from Ms. Sims, dated August 23, 2019, in which she documented the August 2 meeting with Mr. Mitchell. Ms. Sims indicated that during the meeting, Mr. Mitchell presented a "touchscreen" phone to show them a photo of his friend Jessica. Mr. Mitchell told Ms. Sims and Mr. Weiss that his wife had deleted the photos from his phone. Ms. Sims indicated that Mr. Mitchell stated, "My wife had me delete pictures from my phone. So, I had to go to Jessica's profile to get this picture." It is noted that Ms. Sims did not record the brand or model of the touchscreen phone, nor did she conduct a physical inspection of it. Ms. Sims also indicated that Mr. Mitchell informed them that a staff member had viewed his profile on a website called *Plenty of Fish*. When asked about the nature of the website, Mr. Mitchell responded that it was "basically a hook up site."

According to Ms. Sims, the August 2 meeting with Mr. Mitchell began at 9:55 a.m. and concluded at 1:15 p.m. As reflected in the grounds for revocation for allegation 1, on August 2, 2019, Mr. Mitchell left a voicemail message for the probation officer, in which he claimed he had damaged his approved cell phone and intended to purchase another one. The voice message was left at approximately 1:34 p.m.

On August 9, 2019, the probation officer met with Mr. Mitchell and Ms. Sims. During the meeting, Mr. Mitchell was confronted with his unauthorized use of an internet-capable phone. Mr. Mitchell initially had difficulty providing responses to the probation officer's questions, instead offering convoluted explanations to the questions posed to him. He also attempted to deflect blame for his predicament onto others. However, he eventually acknowledged using an unauthorized cell phone for an extended period of time. However, he minimized his culpability, stating it was difficult to live without internet access in this day and age. As to the use of *Snap Chat* or *FaceTime* with his wife's cell phone, Mr. Mitchell said his young daughter reproached him about never seeing her "daddy." He therefore felt compelled to use a video chat app, so that she would be able to see him. As to the *Plenty of Fish* website, Mr. Mitchell claimed that a co-worker of his set up the profile on his behalf. He denied any direct use of the site.

During the August 9 meeting referenced above, Mr. Mitchell was also questioned regarding a voice message he left for the probation officer on August 2. In the message, Mr. Mitchell relayed that he would be purchasing another phone, when in fact, he had been in possession of the new (unapproved) phone for weeks. The probation officer posed the following question to Mr. Mitchell: If he had acquired the cell phone in June 2019, why did his message convey that he had not yet purchased a phone? Mr. Mitchell offered no viable explanation for his misleading voice message. He responded that he had "jumped the gun," and he also made a comment that he originally hesitated to report allegations of misconduct by RRC staff because he knew the issue of his unauthorized cell phone use would be discovered.

PROB12(C)
Name of Offender: Alvin Bernard Mitchell
Docket No.: 13CR04510-002-JAH

August 29, 2019
Page 5

## OFFENDER PERSONAL HISTORY/CHARACTERISTICS

Mr. Mitchell is 42 years old. He reported he married his current wife while in custody. Mr. Mitchell was most recently employed as a carpenter/construction worker for Nevell Group, Inc. During his term of employment, he traveled back and forth to San Diego from Brawley. He was laid off on August 27, 2019.

Mr. Mitchell has a lengthy criminal record, including several adjudications and convictions for violent offenses (battery, assault, assault with a deadly weapon, coercion with force, kidnapping). During his initial interview with the probation officer, Mr. Mitchell was forthcoming about his involvement with the Black MOB gang. He explained he was one of the founding members of the gang. He disavowed any current participation in gang activities.

Records reflect that during his stay at the RRC, Mr. Mitchell received 10 write-ups for misconduct. To his credit, Mr. Mitchell has not tested positive for illicit substances during his term of supervised release.

## SENTENCING OPTIONS

## CUSTODY

**Statutory Provisions:** Upon the finding of a violation, the court may modify the conditions of supervision; extend the term (if less than the maximum authorized term was previously imposed); or revoke the term of supervised release. 18 U.S.C. § 3583(e)(2) and (3).

If the court revokes supervised release, the maximum term of imprisonment upon revocation is 24 months. 18 U.S.C. § 3583(e)(3).

**USSG Provisions:** The allegation (Possession of an Unauthorized Cell Phone and Use of an Unauthorized Device) constitute Grade C violations. USSG §7B1.1(a)(3)(B), p.s.

Upon a finding of a Grade C violation, the court may (A) revoke supervised release; or (B) extend the term and/or modify the conditions of supervision. USSG §7B1.3(a)(2), p.s.

A Grade C violation with a Criminal History Category V (determined at the time of sentencing) establishes an **imprisonment range of 7 to 13 months.** USSG § 7B1.4, p.s. It is noted that in the case of a Grade C violation, and where the minimum term of imprisonment determined under USSG §7B1.4, p.s., is more than six months but not more than ten months, the minimum term may be satisfied by (A) a sentence of imprisonment; or (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement... provided that at least one-half of the minimum term is satisfied by imprisonment. USSG §7B1.3(c)(2), p.s.

Pursuant to USSG §7B1.3(d), p.s., any unserved portion of community confinement shall be ordered to be served, in addition to the sentence imposed as a result of the revocation.

## REIMPOSITION OF SUPERVISED RELEASE

If supervised release is revoked and a term of imprisonment is imposed that is less than the maximum term of imprisonment imposable upon revocation, the court can reimpose supervised release upon release from custody.

PROB12(C)

Name of Offender: Alvin Bernard Mitchell  
Docket No.: 13CR04510-002-JAH

August 29, 2019  
Page 6

The length of such a term shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment imposed upon revocation. 18 U.S.C. § 3583(h) and USSG § 7B1.3(g)(2), p.s.

In this case, the court has the authority to reimpose a term of 3 years' supervised release, less any term of imprisonment imposed upon revocation. 18 U.S.C. § 3583(b).

## JUSTIFICATION FOR BENCH WARRANT

Mr. Mitchell has a significant criminal record, and based on the noncompliance alleged herein, he has difficulty complying with the orders of the Court. A warrant is recommended to secure his presence before the Court.

## RECOMMENDATION/JUSTIFICATION

Mr. Mitchell knowingly and willingly possessed an unauthorized cell phone—a device capable of internet access—for over a month and a half. He did so in blatant violation of the conditions of his release and of the rules and expectations of the halfway house. When confronted with his noncompliance, Mr. Mitchell attempted to downplay the seriousness of his conduct and deflect responsibility for his actions. He also left a voice message for the probation officer, days before the confiscation of his unauthorized cell phone, in which he relayed that he had damaged his cell phone and would be purchasing a replacement. The information he provided in the message was clearly inaccurate, in that he had already acquired a new phone weeks prior. The message is viewed as an attempt to cover his tracks concerning his violation conduct, particularly since he knew the information pertaining to his unauthorized internet/device use would eventually be communicated to the probation officer. To make matters worse, Mr. Mitchell was recently found in possession of an Amazon Fire stick—another internet-capable device.

It is noted that the probation office made numerous concessions for Mr. Mitchell, in an effort to support his rehabilitation and reintegration into the community. Despite his punitive placement, he was allowed to travel to and from San Diego (on a daily basis) for employment, thereby minimizing his actual time spent at the halfway house. Furthermore, the probation officer joined in his request for a subsistence waiver, thus allowing him to save money for his eventual transition to a personal residence. It seems Mr. Mitchell did not appreciate the opportunities and concessions afforded to him.

Mr. Mitchell presents as someone who is strong-willed, intelligent, and has an immense potential for success. Unfortunately, he is also someone with a propensity for manipulation and who has difficulty conforming to the rules, particularly when he does not agree with them or believes they should not apply to him. After being confronted with his noncompliance, Mr. Mitchell acknowledged he was not accustomed to living a prosocial lifestyle, and therefore, he believed it would take time for him to learn how to live prosocially. The probation officer concurs with his assessment. His transition to a prosocial lifestyle will necessarily include lessons about rules and consequences for violating said rules. In this case, it is essential that Mr. Mitchell be cognizant that the consequences he now faces are a direct result of his own misconduct.

Therefore, in view of the aforementioned, it is respectfully recommended supervised release be revoked and Mr. Mitchell be sentenced to six months custody, followed by 30 months' supervised release. All previously imposed conditions of supervision are recommended, with the exception of the punitive RRC placement and the

PROB12(C)
Name of Offender: Alvin Bernard Mitchell
Docket No.: 13CR04510-002-JAH

August 29, 2019
Page 7

---

drug aftercare condition. In lieu of the drug aftercare condition, it is recommended Mr. Mitchell be ordered to participate in cognitive behavioral treatment (CBT), which will provide him the tools necessary to make prosocial choices as he transitions away from his former antisocial lifestyle. The wording for the CBT condition is as follows:

> Participate in a cognitive behavioral treatment program as directed by the probation officer, and if deemed necessary by the probation officer. Such program may include group sessions led by a counselor, or participation in a program administered by the probation office. May be required to contribute to the costs of services rendered in an amount to be determined by the probation officer, based on ability to pay.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: August 29, 2019

Respectfully submitted:
DAVID J. SULTZBAUGH
CHIEF PROBATION OFFICER

by _____
Lorena Gonzalez
Senior U.S. Probation Officer
(760) 339-4215

Reviewed and approved:

_____
Pascual Linarez
Supervising U.S. Probation Officer

PROB12CW

August 29, 2019

# VIOLATION SENTENCING SUMMARY

1. **Defendant:** Mitchell, Alvin Bernard

2. **Docket No.** (Year-Sequence-Defendant No.): 13CR04510-002-JAH

3. **List Each Violation and Determine the Applicable Grade** (*See* USSG § 7B1.1):

| Violations | Grade |
|---|---|
| Possession of an Unauthorized Cell Phone | C |
| Use of an Unauthorized Cell Phone | C |
| Use of an Unauthorized Device | C |

4. **Most Serious Grade of Violation** (*See* USSG § 7B1.1(b))   [ C ]
5. **Criminal History Category** (*See* USSG § 7B1.4(a))   [ V ]
6. **Range of Imprisonment** (*See* USSG § 7B1.4(a))   [ 7 to 13 months ]

7. **Unsatisfied Conditions of Original Sentence:** List any restitution, fine, community confinement, home detention, or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation (*See* USSG § 7B1.3(d)):

| | | | To be |
|---|---|---|---|
| Restitution ($) | | Community Confinement | determined |
| Fine($) | | Home Detention | |
| Other | | Intermittent Confinement | |

PROB12(C)

Name of Offender: Alvin Bernard Mitchell  
Docket No.: 13CR04510-002-JAH

August 29, 2019  
Page 9

---

### THE COURT ORDERS:

__✓__ AGREE. A NO-BAIL BENCH WARRANT BE ISSUED BASED UPON A FINDING OF PROBABLE CAUSE TO BRING THE OFFENDER BEFORE THE COURT TO SHOW CAUSE WHY SUPERVISED RELEASE SHOULD NOT BE REVOKED FOR THE ALLEGED VIOLATIONS.

_____ DISAGREE. THE ISSUANCE OF A SUMMONS ORDERING THE OFFENDER TO APPEAR BEFORE THE COURT ON _____, AT _____, TO SHOW CAUSE WHY SUPERVISED RELEASE SHOULD NOT BE REVOKED.

_____ Other _____

_____  
The Honorable John A. Houston  
Senior U.S. District Judge

9-5-19  
Date

NF